5-11-58. And Mr. Harvey for the appellant, is that right? You may proceed whenever you are ready, sir. May it please the Court, Counsel, Mark Loucks received temporary custody of his children by an order entered in the Circuit Court of Franklin County in December 6, 2007. The custody was made permanent by an order of February 1, 2011. The temporary custody awarded to Mark was pursuant to a motion that he filed in November. And after that was awarded, he filed a motion to send temporary child support. That motion was ultimately heard in the trial court on August 12, 2009. There was some limitation on the financial testimony that could be offered by the petitioner in that case because of a failure to comply with Rule 237 notice to produce financial documents. There were, however, documents produced, exhibits entered, and the documents indicated that Lillian Loucks, the mother of the children, had become an LPN in May of 1997. Her license had lapsed in January of 2007, the end of January, because she made a voluntary choice not to pay the renewal fee for the license. That renewal requirement was to pay $30. She did not and has not made any effort to renew the license. The license is, as the trial court ultimately found, renewable by the payment of the nominal fee. Evidence introduced at that time indicated that statistically, the earning capacity for a licensed practical nurse in non-metropolitan South Illinois was $30,260 per year. By an order reentered in the trial court for temporary support in October of 2009, judge Tedeschi made a specific finding that she had the education and training to earn the mean wage of a licensed practical nurse. He imputed 60% of that income to her for purposes of calculating child support because at the time she had been enrolled as a student at Red Lake College. Judge Tedeschi allowed her a bit of a break on that so that she could continue her education while paying the child support. Just to make sure I understand what the context was in that temporary child support hearing, because she had failed to comply with the Rule 237 notice, had she been barred then from testifying about her actual financial circumstances? No, she was only barred from testifying about the things that were related to the 237 notice. Indeed, if you look at the record, Your Honor, her financial affidavit that was required by the rules of practice before the Second Circuit was our Exhibit A in that hearing. So that her reported income, her reported expenses, her reported assets were all reported on that exhibit. So the judge, I mean that was the first thing that was offered. The subsequent to that, she stopped attending school at Red Lake College somewhere in September or October of 2009. When we learned of that, we filed a motion to modify. We asked the court to impute 100% of the mean earnings of a licensed practical nurse and to reset the child support. We filed that motion on February 23, 2010. The petitioner, Lillian, filed a motion to modify child support downward because she had obtained a part-time job at Walmart and claimed that the child support ought to be based on what she was earning as opposed to what she had the capacity to earn. The trial court ultimately modified the child support downward not only on a temporary basis, but those findings were reiterated in permanent order. And it is from those orders that this appeal is taken. The fundamental question, one fundamental question in this appeal is this. Does a parent have an obligation to pay support for his or her children based upon their earning capacity? We submit that the appellate court in this state has answered that question three times. And in each case, it has answered it in the affirmative. Any analysis of that question has to start with the decision of the appellate court in the case of the NRA marriage of Sweet. In Sweet, the court was faced with a petition similar to this in which the support-paying parent sought to reduce child support because somehow or the other, the income of the parent was not at the level where support had been awarded. The facts in that case were that in Sweet, as in this case, the support-paying parent was voluntarily underemployed because he had left the job that he had to become, quote, unquote, self-employed. What is the date on that Sweet case? The Sweet case is a 2000 decision, Judge. Okay, thank you. It's, let's see. Well, the reason I was asking, because of the financial climate. Yeah, it was 2000. The Sweet case and the case of NRA marriage of Adams and NRA marriage of Dyckie Adams, if I recall, is 04. Dyckie is 08. Cited the same principle. This court, subsequent to that in the case of Hubs, approved the same sort of imputation of income. But Sweet was the first case that addressed the issue. And Sweet Court made reference to a Minnesota case, marriage of Resch. The Resch case was exactly on point where a fellow had been a machinist. He left that job, took a lower-paying job because of what he referred to as the stress of being a machinist. But Sweet Court, excuse me, but Sweet Court cited the Resch case in its opinion. And what it said was that while the court can't direct a person to work in a job, that does not prohibit the court from directing the person to pay support commensurate with the wage he could earn if he sought employment in an occupation for which he is trained and he has the present ability to perform. Pursuant to the court's October order, there was a specific finding that Lillian had the training and experience to earn at the level of an LPN, a non-metropolitan South Illinois. There's never been a finding that's contradicted that. Sweet Court then cited the Resch case, talked about what the duty of a parent is to support his or her children. And they talked about, of course, in the context of the Sweet case, while a desire to work at a particular position or in a certain way may be important, they noted that in that case the supporting parent, quote, is asking the ex-wife to shoulder a disproportionate share of the burden of supporting the party's children so that she can remain or he can remain self-employed. Supporting the child is the joint responsibility of both parents. Respondent may not ask petitioner to work harder so that he can enjoy the benefits of self-employment. That is exactly and precisely the situation that we have here. You look at the record in this case. She clearly, under the Illinois Administrative Code, could renew her license and LPN by paying what trial court termed to be a nominal sum. In Sweet, the appellate court imputed income based upon that capacity. Initially, in this case, the trial court imputed income to earn at that capacity. The trial court then, in modifying it, backed away from that, and the only two reasons that were really given are reasons which I submit to you are not supported by the record. First, the trial court says, well, she had to stop going to school because she couldn't afford to pay the support that I ordered. There are three points I want to make about that. Number one is the trial court, in awarding support initially, had already made the dispensation to allow her to go to school and to pay the support that was ordered, and the only requirement that she had to do to be able to accomplish that was to work at her capacity, which is exactly what the case law requires. So the dispensation for her education had already been made, and the only reason she couldn't afford it, if she couldn't, is because she refused to do what the case law said she had to do, and that's work at her capacity. Second, if you look at the circumstances of her leaving school and taking a job, the support had nothing to do with it. She left her employment, or she left school, September or October of 2009, and what did she do? She quit going to class. Rather than withdrawing or doing anything of that sort, she simply quit going to class, took failing grades in all the classes, and that was it. When she was asked correctly why she did that, it wasn't because she hadn't been given a job to pay support. It was because, well, I was sick, or, well, I had family responsibilities. And when she was asked directly what was her illness, she never had it diagnosed. So it couldn't have been that significant. So that September or October, her testimony is she did not get the part-time job at Walmart until March of 2010, six months later. So she hardly left school because she needed a job to pay support. The third thing, she claims to have been unable for whatever reason to be a nurse, and that simply isn't true here. The court made a finding that it had been a decade or so since she had practiced nursing. We've cited in the brief we've given the specific pains number and the questions and answers that she had been asked at a previous hearing. In that case, she had practiced nursing as recently as May of 2006 because she said that she was working part-time for a Dr. Panger card, who was a pediatrician here in town at the time, two days a week during schools and summer vacations. School vacation times off from school. So when she tries to say she hasn't practiced nursing for 10 years, the court made that finding that's directly contradicted by her own testimony, first. Second, the court made some reference to some nursing skills that somehow she claimed not to have. There simply is no testimony about that. There is no time in which she ever delineated for the court any skill that she claimed not to have that precluded her from working as a nurse. Now, the administrative code makes it very clear that if her license has been lax less than five years, the only thing she's got to do is to pay the unpaid fees maxed out by the code at $125. She gets her license back. She gets her earning capacity back. There's nothing, no requirement for any continuing education or anything like that? No, sir. Not for the first five years of life. And we're still, at the time of this hearing, we're still today? Because it's 2007, January 31, 2007. It's when it laxed. It's when it laxed. She could send the money in today and be licensed next week. And this is the ultimate point. When she is questioned, and I've made reference to those questions and in some of the cases in our brief, we give you the questions and the answers. She says the trial court failed. I'm not going to do it. I'm not going to do it. She left the license laxed by her own admission as a matter of her choice. She has said that she refuses under any circumstances to go back to it. No rationale is given as to why. She doesn't say that there's any particular skill or something that she can't do. When you look at what the Administrative Code says, I would submit to you the Administrative Code carries with it the presumption that within that five-year period she's still capable of doing the job, and she does nothing to rebut that presumption. So when the trial court finds that somehow or the other she hasn't nursed for 10 years, that's not true. Her testimony is the opposite. When the trial court says she left school because she couldn't afford to pay the support, well, all she had to do to afford to pay the support was get a job within her capacity. When the trial court says she lacks skills, there's no testimony about the lacking of any skills. This case comes down to just this. Is she allowed, under the law of the state, by the simple refusal to do that which she could clearly do, to burden Mark with a disproportionate part of the financial responsibility of caring for these children? That's what it amounts to. It's just that simple. Three times the appellate court has addressed that directly regarding underemployment. Three times the appellate court has said she cannot. I simply want you to reaffirm what the appellate court has already said. Thank you, Mr. Harvey. And you'll have a chance for a rebuttal. And Ms. Minor, you may proceed. Your Honor, my name is Ronald Minor, and I represent the petitioner. I believe in this case that I'm going to ask you to keep your voice up just a little bit if you can. Talk just a little bit louder. I usually talk awfully loud. In answer to the question that you asked, as to the Rule 237, I would ask the court to look at the order, which is Appendix B-1 of the appellant's brief. It is the order as to the motion to reconsider. At page 2 of that order, and I believe it's the last part of the first full paragraph, where the court says, as a consequence of the violation, the court barred petitioner counter-respondent from testifying about her financial issues pursuant to the Supreme Court Rule 219C-IV, I believe. That's in the court's finance. And further, in that same order, on page 3, the second paragraph, the court's findings in that order, starting with number 3, was Ms. Louch had stopped her education pursuits because she could not afford to go to school and pay the order to support. Although she possessed an Illinois LPN certificate, she had not practiced nursing in over a decade. Her previous employment included working as a housewife, secretary of profession, among other things, but she had not worked as a nurse on a regular basis. Penny found that she no longer possesses the skills to work as an LPN, and she did indicate that she does not want to work as an LPN. The honors, Ms. Louch was licensed in January of 1997. I believe her certificate was March the 27th, 1997. She was still married to Mr. Louch at that time. In fact, they didn't file her divorce until 2000. So for three years they were still married. There is no evidence whatsoever that she ever practiced nursing during those three years. In fact, she was continuing her education in educational psychology and, in fact, worked for a school system in that field, in educational psychology. The question, I believe, should be whether or not she acted in that faith. When her license expired in 07, in January of 07, she was still a custodial parent in 07, in January of 07. So she wasn't letting her license expire in order to evade or act in bad faith about her responsibility to these children. The custody didn't change until December of 07. This case, and I was not the initial attorney in this case, I was not the attorney of the record initially. I believe, though, this case was initiated by her filing, a petition to increase Mr. Louch's child support. I don't think she knew when her license expired that there was any indication whatsoever that she was going to lose custody of these two children at the end of that year. So she wasn't acting in bad faith. And I believe that is exactly what the court found. I believe all the cases that were cited, all these people were. We had one who quit his job because he wanted to go to Germany. That's where his girlfriend was. We had one who quit working with a Terminex company, making a fairly decent income to open his own business and get a new truck. That was another one of the cases. Every case that was cited was a situation where the non-custodial parent was acting in bad faith. There's no indication here that is this case. In the Sweet case, that case also was cited by the gunman. That case states very clearly, the setting or modification of child support is within the trial court's discretion and will not be reversed absent an abuse of discretion. I don't believe there's anything in the record that will show the gunman just abused his discretion. The issue should be whether or not he abused his discretion or he acted against the manifesto of the evidence when he modified the petition. He modified that petition from an imputed income of $423.64 to $286.22, a difference of $137.42 per month, based on what her income actually was in the May 2010 hearing. This court, I believe, made one of the wisest decisions I've heard in anything concerning this type of an issue. When it stated, Henry, Mary, and Moore, prospects and expectations of a much larger income are an insufficient basis upon which to fix child support. Providence places limits for such support within the visible horizon. I believe that is the situation it still is, and it still is up to the court to hear all of the evidence to make that determination, and I believe the gentleman in question has to be given that. No further questions. Thank you, Ms. Mayer. Any rebuttal, Mr. Hart? Yes, sir. May it please the court, let's start with our discussion of Moore. The Moore case has nothing to do with this. The Moore case, first of all, predated the current version of the child support statute. But secondly, in the Moore case, what the trial judge did was not to award on the basis of what the earning capacity was, because in that case, the surgeon moved from Illinois to Iowa and was getting the same amount of money in Iowa that he was getting here. So there wasn't any imputation or underemployment. What the trial court did in Moore is to fix an automatic escalator in the child support every year because the trial court assumed that the surgeon would make more money next year than he made this year and would make more money the year after that than he made the second year. And the court simply said you can't do that. That's not what we're dealing with here. We're dealing with a statistically established earning capacity about which this record shows no dispute. We are dealing with the abject refusal of the support-paying spouse to do anything to earn at her capacity, which is exactly and precisely the case of Sweet, Dikey, and Adams. There is no distinction. Whether she let the certificate lapse before or after she lost custody isn't really relevant. The point of the matter is what it takes to hang that certificate on the wall and what it took to keep the certificate on the wall was paying $30 a year. Nothing changed about her education and her training because she chose not to pay the $30 for the year 2007. Judge Sredesky found, he never revoked his certificate, Judge Sredesky found that she had the training and education to earn at that level. We're left all through this case, and even his findings in his December order was she refuses to do so. Now, counsel reads you his findings from that order, and our point in the brief is the operative findings there are against the manifest way of the evidence. Number one, that she left school because she couldn't afford to pay child support and had to get a job. She quit going to school six months before she got the job. That's a little hard to justify. Number two, that she hadn't practiced in 10 years her own testimony. On the record, in this case, the previous hearing was she'd been nursing as recently as May 2006. How do you support those findings in the face of that record? This court says it's against the manifest way of the evidence if an opposite conclusion is apparent. I submit to you the opposite conclusion is apparent. In terms of her educational, trying to get a degree in educational psychology, we went through this in the brief. We've given you her transcript. If you can find any basis to believe that this woman was a serious student about anything other than getting a MAP or a Pell Grant, I simply say to you that it isn't apparent on the record, and it certainly isn't apparent from the transcript, and there isn't any argument made about that in the brief. This case fundamentally is this. You have to decide whether or not Lillian can impose a disproportionate burden for the financial support of these children on Mark by simply refusing to work at any job for which the court has already found that she has the training and the ability to do. Now, the court initially found that she could not. The court reversed that finding based upon reasons that, frankly, are not apparent when you look at the record. We simply ask you to do what the Sweet court did, the Adams court did, the Dyke court did, and say that she is required to pay child support at this point based on 100 percent of the imputed earnings of a licensed practical nurse for South and North, because the only change in circumstances in this case is when she quit school. The only thing that changes is she no longer needs the distanciation to go to school because she voluntarily quit. That's what the case ought to be remanded to do. The court ought to remand it with corrections for the court to calculate child support based upon 100 percent of the imputed earnings of a licensed practical nurse, and that calculation ought to be retroactive to the filing of our motion in February 2008. All right. Thank you, Mr. Harvey. Thank you, Ms. Minor. Thank you for your briefs and your arguments. We'll take this matter under advisement and issue our decision in due course.